```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────
OKLAHOMA POLICE PENSION AND
RETIREMENT SYSTEM,
                                            11 Civ. 8066 (JGK)
                  Plaintiff,
                                            OPINION AND ORDER
       - against -

U.S. BANK NATIONAL ASSOCIATION,

                  Defendant.
─────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

This case arose out of residential mortgage loans that were pooled and sold together as Bear Stearns mortgage backed securities ("MBS"). The plaintiff, Oklahoma Police Pension and Retirement System ("OPPRS"), brought this putative class action against the defendant, U.S. Bank National Association ("U.S. Bank"), which was the trustee for fourteen trusts (the "Covered Trusts") that issued the MBS. The plaintiff and the other members of the putative class invested in these trusts. The plaintiff alleges violations of the Trust Indenture Act of 1939 (TIA), 15 U.S.C. § 77aaa et seq., breaches of contract, and breaches of the implied covenant of good faith and fair dealing under New York law.

On May 31, 2013, this Court granted in part and denied in part the defendant's motion to dismiss. Specifically, the Court denied the defendant's motion to dismiss with respect to the claim for breach of contract and part of the claim under the

TIA. Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n (OPPRS I), 291 F.R.D. 47, 67, 71 (S.D.N.Y. 2013). The defendant now moves for partial summary judgment on OPPRS's breach of contract claim on the basis that OPPRS no longer holds securities issued by any of the Covered Trusts. For the reasons explained below, the motion is **granted**.

## I.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The

2

substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

II.

The Court assumes the parties' familiarity with the factual background and recites only those facts relevant to the present motion. For a more complete description of the background of this case, see OPPRS I, 291 F.R.D. at 52-57. The following facts are undisputed, unless noted otherwise.

The plaintiff invested in MBS issued by two of the fourteen trusts (the "Covered Trusts") for which the defendant was the trustee. Id. at 51, 53-54. Five of these trusts ("indenture trusts") issued notes and were governed, in part, by indenture agreements. Id. at 53 n.3. The other nine trusts ("PSA trusts") issued certificates and were governed by pooling and servicing agreements ("PSA"). Id. The plaintiff had purchased notes in one indenture trust and certificates in one PSA trust. The indenture agreements and the PSAs are collectively referred to as the "Governing Agreements." Id. at 53.

The plaintiff's breach of contract claim alleges that the defendant trustee breached its duties under the Governing Agreements by, among other things, failing to secure and maintain properly the rights in all of the mortgages backing the securities that the trusts issued. (2d Am. Compl. ¶¶ 99-105.) As a result, the rights of the MBS holders to collect the full principal and interest on the mortgage loans were impaired, and the value of the MBS was reduced. (2d Am. Compl. ¶¶ 102-05.)

Previously, at the oral argument on the defendant's motion to dismiss, the plaintiff admitted that it no longer held any notes or certificates issued by the Covered Trusts. (Tr. of Oral Argument on Feb. 1st, 2013 ("Feb. 1 Tr.") at 87.) All of the notes and certificates were sold before the filing of the initial complaint in November 2011. (Tr. of Oral Argument on Nov. 5th, 2013 ("Nov. 5 Tr.") at 4.) Based on these facts and under New York General Obligations Law § 13-107, the defendant now moves for summary judgment on the plaintiff's common-law breach of contract claim.

### III.

The parties do not dispute that New York law applies to the contract claim in this case. Section 13-107 of the New York General Obligations Law provides that

> [u]nless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferrer, whether or not such claims or demands are known to exist, (a) for damages or rescission against the obligor on such bond, (b) for damages against the trustee or depositary under any indenture under which such bond was issued or outstanding, and (c) for damages against any guarantor of the obligation of such obligor, trustee or depositary.

N.Y. Gen. Oblig. Law § 13-107(1). Moreover, § 13-107 defines "bond" as "any and all shares and interests in an issue of

bonds, notes, debentures or other evidences of indebtedness of individuals, partnerships, associations or corporations, whether or not secured." Id. § 13-107(2).  The section further defines "indenture" as "any mortgage, deed of trust, trust or other indenture, or similar instrument or agreement . . . , under which bonds as herein defined are issued or outstanding, whether or not any property, real or personal, is, or is to be, pledged, mortgaged, assigned, or conveyed thereunder." Id. § 13-107(3).

In other words, absent express reservation in writing, the sale or transfer of a bond bars the transferor's cause of action against the issuer (obligor) of the bond or any claim for breach of contract against the trustee of the trust issuing the bond and vests any such claim in the transferee of the bond.  Indeed, the parties do not dispute that, if the notes and certificates issued by the Covered Trusts are "bonds" within the meaning of § 13-107, the plaintiff's claim for breach of contract is barred by § 13-107.  The plaintiff also does not contest that the notes are "bonds" within the meaning of § 13-107.  The definition of "bonds" plainly included "notes." Id. § 13-107(2).  Hence, as an initial matter, the plaintiff's claim for breach of contract must be dismissed at least with respect to the notes.  The plaintiff does not dispute this conclusion.  (Nov. 5 Tr. at 16.) Thus, the sole disputed issue before the Court on this motion is whether the certificates are also "bonds" within the meaning of

6

§ 13-107. If the certificates are "bonds" within the meaning of that statute, the plaintiff's breach of contract claim must also be dismissed with respect to the certificates.

The definition of "bonds" under § 13-107, which includes "shares and interests in an issue of bonds, notes, debentures or other evidences of indebtedness," N.Y. Gen. Oblig. Law § 13-107(2), closely parallels the language used in § 304(a), the exemption provision of the TIA, 15 U.S.C. § 77ddd(a). Section 304(a) of the TIA provides that

> [the TIA] shall not apply to any of the following securities:
>
> (1) any security other than (A) a <u>note, bond, debenture, or evidence of indebtedness</u>, whether or not secured, or (B) a certificate of interest or participation in any such <u>note, bond, debenture, or evidence of indebtedness</u>, . . . ;
>
> (2) any certificate of interest or participation in two or more securities having substantially different rights and privileges, or a temporary certificate for any such certificate;
>
> . . . .

15 U.S.C. § 77ddd(a) (emphasis added). The Court previously concluded that the certificates at issue are "evidence of indebtedness" under § 304(a) of the TIA. <u>OPPRS I</u>, 291 F.R.D. at 62. The parties' dispute on this motion centers on what ramification, if any, that conclusion has on the application of § 13-107.

In OPPRS I, the Court determined that § 304(a)(1) does not provide a basis for the certificates to be exempt from the TIA, because the certificates fall under the plain language of both § 304(a)(1)(A) and § 304(a)(1)(B), both of which describe exceptions to the exemption. OPPRS I, 291 F.R.D. at 62. The certificates in this case fall under § 304(a)(1)(A) because, "[l]ike the notes, the certificates are evidence of indebtedness because mortgagors are obligated to make payments at fixed intervals on the mortgages underlying the certificates, and the certificate holders have the right to collect from the payment waterfall." Id. The certificates fall under § 304(a)(1)(B) because they are "plainly interests in the underlying evidence of indebtedness," and "[t]he structure of the trusts gives certificate holders an interest in the underlying evidence of indebtedness, namely the MBS in which the certificates participate." Id. Based on these two independently sufficient reasons, the Court concluded that § 304(a)(1) does not provide a basis for exempting the certificates from the TIA. Nevertheless, the Court also found that, because the mortgage loans underlying each of the certificates "have substantially different rights and privileges," id. at 63, the certificates are exempt from the TIA under § 304(a)(2) as "certificate[s] of interest or participation in two or more securities having

substantially different rights and privileges." Id. (quoting 15 U.S.C. § 77ddd(a)(2)) (internal quotation marks omitted).

The certificates at issue in this case are not exempt under § 304(a)(1) because they are evidence of indebtedness and are certificates of interest in the underlying debts. Because such evidence of indebtedness is expressly covered under the definition of "bonds" under § 13-107, N.Y. Gen. Oblig. Law § 13-107(2), it follows that the certificates are also "bonds" for the purpose of § 13-107.

The plaintiff argues that, because the Court eventually found that the certificates are exempt from the TIA under § 304(a)(2) as "certificate[s] of interest or participation in two or more securities having substantially different rights and privileges," the Court necessarily decided that the certificates at issue are "certificate[s] of interest or participation" under § 304(a)(1)(B) and are not "a note, bond, debenture, or evidence of indebtedness" under § 304(a)(1)(A). Accordingly, the plaintiff contends that the certificates in this case are not "bonds" under New York General Obligations Law § 13-107. However, the plaintiff's argument ignores the Court's explicit finding that the certificates are indeed "evidence of indebtedness" under § 304(a)(1)(A), even though they are also "certificate[s] of interest or participation in two or more

9

securities having substantially different rights and privileges" under § 304(a)(1)(B). OPPRS I, 291 F.R.D. at 62-63.

Moreover, while the certificates are not exempt under § 304(a)(1)(B) of the TIA because they are certificates of interest or participation in "evidence of indebtedness," they are exempt under § 304(a)(2) because they are "certificate[s] of interest or participation in two or more securities having substantially different rights and privileges."[1] To put it simply, the certificates are evidence of indebtedness, as the Court previously explained for purposes of the TIA. They are also evidence of indebtedness under § 13-107 and therefore a "bond" for purposes of that statute.

The plaintiff attempts to rely on legislative history to re-argue the Court's prior conclusion that the certificates are exempted from the TIA under § 304(a)(2). However, the Court

---

[1] On this issue, the Court reached a different conclusion from another court in this District that has recently interpreted the same statute. Compare OPPRS I, 291 F.R.D. at 62-63 with Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of Am., NA, --- F. Supp. 2d ---, No. 12 Civ. 2865, 2013 WL 1877618, at *8 (S.D.N.Y. May 6, 2013) (holding that, in order to be exempt under § 304(a)(2), a security must be a "certificate of interest" under § 304(a)(1)(B) and cannot be a debt instrument under § 304(a)(1)(A)). However, that difference has no bearing on the present motion, because the Policemen's Annuity court held that certificates issued by trusts holding MBS were debt instruments under § 304(a)(1)(A). Policemen's Annuity, 2013 WL 1877618, at *8. Therefore, aside from the different holdings with respect to the relevant TIA exemption, there is no disagreement between the two decisions over the conclusion that the certificates are evidence of debts under § 304(a)(1)(A).

need not look beyond the plain text of the statute unless 1) its meaning is not clear or 2) a mechanical reading of the text would lead to an "absurd" disposition.  See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000); Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992); Novak v. Kasaks, 216 F.3d 300, 310 (2d Cir. 2000). Here, as explained above, the language of the statute is not ambiguous and does not lead to absurd results.  In any event, as the Court explained in OPPRS I, the Court's reading of § 304 is consistent with the interpretation of § 304(a)(2) by the Securities and Exchange Commission as well as with legislative history, secondary authorities, and the evident intent of the parties in drafting the agreements governing the certificates without reference to the TIA.  OPPRS I, 291 F.R.D. at 63-66.

   Therefore, the text of the statute does not support the plaintiff's argument that, simply because the Court found the certificates to be exempt under § 304(a)(2), the certificates are not evidence of indebtedness.  To the contrary, the certificates are evidence of indebtedness because they plainly represent creditors' interests in the underlying mortgages--in this case, the certificate holders' right to collect from the payment waterfall.  OPPRS I, 291 F.R.D. at 62.  Accordingly, the certificates are "bonds" within the meaning of New York General Obligations Law § 13-107, and the sale of the certificates bars

the plaintiff from asserting a cause of action for breach of contract.

In addition, as noted above, because the notes are "bonds" under New York General Obligations Law § 13-107(2), see also OPPRS I, 291 F.R.D. at 62, the plaintiff has no cause of action for breach of contract with respect to the notes. Accordingly, the defendant's motion for summary judgment is **granted** and the plaintiff's second cause of action based on breach of contract is **dismissed**.

**IV.**

The dismissal of the plaintiff's claim for breach of contract leaves no such claim in the case. Nevertheless, the plaintiff attempts to advance the argument that, even if the plaintiff's claim for breach of contract is dismissed, the claim should not be dismissed in its entirety because the plaintiff still has its TIA claim before the Court. The plaintiff contends that the remaining TIA claim with respect to the notes gives it standing to bring the contract claim on behalf of a putative class because the plaintiff suffered, for TIA claim purposes, injuries "similar" to the injuries in the contract claim. This argument is without merit.

It is well-established that "a plaintiff must demonstrate standing for each claim he seeks to press." DaimlerChrysler

Corp. v. Cuno, 547 U.S. 332, 352 (2006).  In a class action, there still must be "a named plaintiff sufficient to establish jurisdiction over each claim advanced."  Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 112 (2d Cir. 2013) (emphasis added).  The plaintiff misconstrues this language in IndyMac and argues that, so long as the plaintiff's claim is "sufficient to establish jurisdiction," the plaintiff has standing to bring other claims on behalf of a class for "similar" injuries.  This argument is directly contrary to the requirement that a plaintiff must demonstrate standing with respect to "each claim."  Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 86 (2d Cir. 2013), as amended (Mar. 21, 2013) (quoting Baur v. Veneman, 352 F.3d 625, 641 n.15 (2d Cir. 2003)); see also DaimlerChrysler, 547 U.S. at 335.

    None of the authorities cited by the plaintiff support its proposition that a "similar injury" suffered by potential members of a class is sufficient to rescue a claim from dismissal when the only plaintiff in the case has no such claim. In NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145 (2d Cir. 2012), cert. denied, 133 S. Ct. 1624 (2013), a plaintiff brought claims under the Securities Act, and the putative class included investors in securities in which the plaintiff itself did not invest but which originated from the

same originators.  Id. at 149.  The Court of Appeals held that the plaintiff had standing to bring a class action on behalf of those other investors because the injury it personally suffered "implicate[d] 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  Id.  Nevertheless, the claims that the plaintiff in NECA sought to bring on behalf of others were the same Securities Act claims that the plaintiff itself had standing to bring.[2]  Id. at 158-59, 162.  By contrast, in this case, the sole plaintiff itself has no contract claim and thus cannot bring a contract claim on behalf of anyone else.  The fact that the plaintiff still has a TIA claim is of no consequence: there is no case law supporting the plaintiff's theory that a plaintiff can pursue a claim that it does not have on behalf of a class simply because the plaintiff suffered a "similar injury" for a different claim.[3]

---

[2] The NECA plaintiff's own claims were initially dismissed but reinstated on appeal.  Id. at 156, 168.

[3] One line of cases on which the plaintiff relies concerned situations in which class certification was "logically antecedent" to determination of standing and therefore courts declined to dismiss on the basis of lack of standing before class certification.  E.g. Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999); In re DDAVP Indirect Purchaser Antitrust Litig., 903 F. Supp. 2d 198, 213 (S.D.N.Y. 2012); Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012); Blessing v. Sirius XM Radio Inc., 756 F. Supp. 2d 445, 450 (S.D.N.Y. 2010); In re Grand Theft Auto Video Game Consumer Litig. (No. II), No. 06 MD 1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006); In re Buspirone Patent Litig., 185 F.

Similarly, this Court's earlier decision in OPPRS I denying the defendant's motion to dismiss the class claim, OPPRS I, 291 F.R.D. at 60, also does not permit the plaintiff to bring a class claim when it loses the standing to bring an individual claim. OPPRS I addressed the exact same question of standing as

---

Supp. 2d 363, 377 (S.D.N.Y. 2002). However, none of the cases involved the situation in which a plaintiff sought to bring a claim under a different theory for which the plaintiff had no standing. Many of these cases were nation-wide class actions in which claims were brought under parallel provisions of different states' consumer protection or antitrust laws, which is again not the situation in this case: the standing challenges in those cases did not concern whether the named plaintiffs could bring the consumer protection or antitrust claims but concerned whether the plaintiffs residing in some states could represent plaintiffs in other states. E.g. DDAVP, 903 F. Supp. 2d at 213-14; Blessing, 756 F. Supp. 2d at 452; Grand Theft Auto, 2006 WL 3039993 at *3; Buspirone, 185 F. Supp. 2d at 377.
   In addition, as the Second Circuit Court of Appeals has subsequently made clear, logical antecedence is only a narrow "exception" to the rule that Article III standing is a prerequisite to class certification. Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 65 (2d Cir. 2012). The exception applies in cases in which "the Article III concerns would arise only if the Court affirmed class certification." Id. For example, in Ortiz, the proposed class included both claimants with asbestos-related diseases and claimants who had been exposed to asbestos but had not manifested injury, and the Article III objections concerned the latter group of "exposure-only" claimants. Ortiz, 527 U.S. at 825-26. Because this latter group of claimants would not even be in the case if there was no class certification, the Court did not deem it necessary to address the Article III standing of these claimants prior to addressing class certification, id. at 831,--indeed, the Ortiz Court eventually found class certification to be improper, id. at 864, and thus in fact did not need to reach the standing of those "exposure-only" claimants. Therefore, in light of our Court of Appeals's caveat in Mahon, the Ortiz logical antecedence rule is to be construed narrowly and is inapplicable to the present case involving a challenge to the sole named plaintiff's standing to bring a claim under a separate cause of action which it itself does not have standing to bring.

15

the one presented in NECA: whether "the plaintiff has standing to assert the claims alleged in the Complaint on behalf of the putative class of purchasers of interests in all fourteen Covered Trusts" when the plaintiff itself only invested in two of the trusts.  Id. at 58.  The Court upheld the plaintiff's standing to bring claims on behalf of the putative class without addressing specifically which claims the plaintiff had standing to bring for the class.  See Id. at 58-61.  The plaintiff had a breach of contract claim at the time and therefore could bring such a claim on behalf of the class even though the plaintiff itself did not invest in some of the other trusts at issue. However, the Court did not hold that the plaintiff would have standing to assert a class claim on a cause of action that the plaintiff itself did not have.  When the plaintiff's own breach of contract claim is dismissed, nothing in OPPRS I precludes the dismissal of the corresponding putative class claim.

Therefore, because no named plaintiff in this case has a claim for breach of contract, no such claim remains in the case. Accordingly, the claim for breach of contract must be dismissed in its entirety.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendant's motion for summary judgment on the plaintiff's second cause of action is **granted** and the claim for breach of contract is **dismissed** in its entirety.  **The Clerk is directed to close Docket No. 49.**

**SO ORDERED.**

**Dated:     New York, New York**
**           December 12, 2013**                  _____/s/_____
                                                    **John G. Koeltl**
                                          **United States District Judge**